## JOHN IRVIN v. THE STATE.

1. INFORMATIONS. — No standard of penmanship has been prescribed for indictments or informations; and as the supporting affidavit is a fundamental part of an information, reference to it is legitimate to solve a doubt arising from the conformation of a letter in the information.

2. CHARGE OF THE COURT ON CIRCUMSTANTIAL EVIDENCE. — In a misdemeanor case the court instructed the jury that, "to justify a conviction when the proof of any one of the issues depends upon circumstances proved to exist, the circumstances proven must be incapable of explanation upon every other reasonable hypothesis than that of the defendant's guilt." *Held*, correct in principle, and sufficient in the present case on the subject.

3. SAME. — It was not error to refuse a requested instruction which was predicated on the erroneous assumption that the State's evidence was entirely circumstantial, and which directed the jury to acquit unless the defendant's guilt had been so demonstrated as to exclude every possibility of his innocence. See the opinion *in extenso* on the latter point.

APPEAL from the County Court of Johnson. Tried below before the Hon. W. J. EWING, County Judge.

All material facts appear in the opinion.

No brief for the appellant has reached the reporters.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, J. In this case, as in the case of William Irvin, decided a few days ago, the original affidavit and information on file in the lower court have been sent up for inspection, in order that we might be better enabled to determine one of the grounds made in the motion to quash. It was not made so pointedly in the former case as we here find it in the third subdivision of the motion, in words following: " Because the same fails to allege that the defendant did kill said swine, but instead of the word " kill," the word " Rill " is used.

As was said by this court in *Witten* v. *The State*, 4 Texas Ct. App. 70, " it has been held time and again that

bad spelling will not vitiate an indictment (nor information), and we can perceive no good reason why bad or awkward writing should.    The Legislature has not, in providing the requisites for an indictment (or information), established a standard of penmanship in which it must be prepared, as one of the number."

No one can possibly be misled in this instance as to the letter the pleader was trying to make, and in so trifling a matter, if there should a doubt arise, we would look to the affidavit or complaint accompanying the information to aid us in its solution ; for in misdemeanors the affidavit or complaint is required to be filed with and is part of the information,— a fundamental part.    The information is based upon and must be characterized by it.    Gen. Laws 15th Leg. p. 20 ;. Pasc. Dig., art. 2871 ; Rev. Stats., Code Cr. Proc., arts. 430, 431 ; *Davis* v. *The State*, 2 Texas Ct. App. 184 ; *Johnson* v. *The State*, 4 Texas Ct. App. 594 ; *Casey* v. *The State*, 5 Texas Ct. App. 462.

An inspection of the original complaint, which is also before us, will, we think, satisfy the most skeptical and hypercritical that the letter is a " K " and not an " R."    See also *Hutto* v. *The State*, decided at the present term, *ante*, p. 44.

No error was committed by the court in overruling the motion to quash.    See *W. Irvin* v. *The State*, decided at the present term, *ante*, p. 78.

But it is contended that the evidence does not support the verdict, because it leaves the main fact necessary to be ascertained in doubt and uncertainty, to wit : whether the hog alleged to have been wilfully and wantonly killed by defendant died, in fact, of the gunshot wound inflicted by defendant, or was drowned in the water of the slough where its dead body was found by the owner.

The special instructions asked by defendant and refused by the court assume as a postulate that the evidence of the prosecution was entirely circumstantial in character.    Such

is not the case. The witness Whitiker says: " On or about the 12th of August, A. D. 1878, I was in the defendant's field and saw him shoot a black hog. At the time I saw him shoot the hog I was standing off about fifty yards from the corn, and about one hundred and fifty yards from the defendant; defendant was out in the corn one hundred yards. After the hog was shot, I followed it out of the field and across the slough, and over on the island between the slough and the river, and there I found the hog lying on the ground in a low condition. He had been shot behind the shoulders, with a small rifle. I put my foot on him and he did not say anything, for he was speechless. The hog was A. J. Pierce's, and would weigh about 240 lbs."

A. J. Pierce, the owner, testified that on the 15th or 16th of August he found a black hog of his, dead, back of defendant's cornfield, in the mud and water of the slough; it was swelled up, — looked like it had been dead for a day or two. He did not pull it out of the water; did not examine to see whether it had been shot or not, and did not know what caused its death.

Amongst other things, in a very appropriate charge, the court instructed the jury that, " to justify a conviction when the proof of any one of the issues depends upon circumstances proved to exist, the circumstances proven must be incapable of explanation upon every other reasonable hypothesis than that of defendant's guilt."

Defendant's fifth special instruction, which was refused by the court, as indeed were all his instructions, was in these words: " You are further instructed that where a party is on trial for killing a swine, and it is proved that the swine was shot, but not instantly killed, and the same hog is afterwards found dead in water or in a river, before a jury could convict they should be satisfied from the evidence that the swine died from the effect of the, shot, and not from the effect of the water; and you are instructed in this case that if you find from the evidence that defendant shot the hog,

and that the shot did not instantly kill the swine, and that the same was afterwards found in the water of the river, dead, before you can find him guilty you must believe from the evidence, beyond a reasonable doubt, that the hog so found dead died from the immediate effect of the shot, and not from the effect of the water. The fact that the shot was the remote cause, and the water the immediate effect of the death of the hog, would not justify a verdict of guilty; but you must find that the shot was the immediate and direct cause of the death, otherwise you will find defendant not guilty."

The evidence did not require or warrant such a charge. When the hog was shot by defendant, as stated by Whitiker, the water in the slough was low, and the hog waded it to the other bank, where Whitiker saw and left him " *in articulo mortis*," as we have every reason to presume. When Pierce saw the hog, the waters in the slough and river were up, and, for aught that appears, the animal may have remained on the same spot where Whitiker left it, and yet been in water when Pierce saw it. But whether this presumption is correct or not, the instruction was obnoxious in that it submitted an issue which was not fairly raised by the evidence, and which it might have been impossible, in the nature of things ordinarily, either to prove or disprove by positive evidence.

" To say that the proof in any case must show the innocence of the accused ' to be impossible,' would necessarily be to say that it must demonstrate his guilt, since nothing short of such demonstration could exclude the possibility of innocence. * * * The degree of certainty upon which the jury are justified in convicting, termed moral certainty, does not amount to demonstrative certainty of guilt, or certainty which necessarily excludes the possibility of innocence; on the contrary, it supposes and entirely consists with the possibility of innocence, and it is itself nothing more than the comparatively measurable, limited degree of

certainty ' that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it, — a certainty of the guilt of the prisoner, not indeed beyond all possible or imaginary doubt, but beyond all reasonable doubt.' " *The People* v. *Brotherton*, 47 Cal. 388.

In the first section of his great work on Evidence, Mr. Greenleaf says : " In the ordinary affairs of life, we do not require demonstrative evidence, because it is not consistent with the nature of the subject, and to insist upon it would be unreasonable and absurd. The most that can be affirmed of such things is, that there is no reasonable doubt concerning them. The *true question*, therefore, in trials of fact, is not whether it is possible that the testimony may be false, but whether there is *sufficient probability* of its truth ; that is, whether the facts are shown by competent and satisfactory evidence. Things established by satisfactory and competent evidence are said to be *proved*." 1 Greenl. on Ev., sect. 1.

The court did not err in refusing to give the special instructions, and in the paragraph of the charge given as quoted above on circumstantial evidence instructed the jury in conformity with established precedent. 3 Greenl. on Ev. sect. 29 ; *Williams* v. *The State*, 41 Texas, 209 ; *Rodriguez* v. *The State*, 5 Texas Ct. App. 256.

There is no error in the record, and we are of opinion the judgment should be affirmed.

*Affirmed.*